[Cite as *State v. Horton*, 2024-Ohio-612.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo
        Appellee

v.

Hollis Lee Horton
        Appellant

Court of Appeals No.  L-22-1267

Trial Court No.  CRB-22-06789

**DECISION AND JUDGMENT**

Decided: February 16, 2024

\* \* \* \* \*

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

\* \* \* \* \*

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Hollis Horton, from the January 18, 2023 judgment[1] of the Toledo Municipal Court.  For the reasons that follow, we affirm.

---

[1] Appellant initially appealed a decision journalized on November 9, 2022.  We remanded the case for the trial court to enter a single sentencing entry meeting the requirements of Crim.R. 32(C), and the trial court complied with the January 18, 2023 decision.

# I. Assignment of Error

The trial court errored when it convicted [appellant] of theft, as all supporting testimony was hearsay.

## II. Background

{¶ 2} On July 19, 2022, appellant was charged with aggravated menacing, in violation of R.C. 2903.21, a first-degree misdemeanor; domestic violence, in violation of R.C. 2919.25(C), a second-degree misdemeanor; criminal damaging, in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor; and petty theft, in violation of R.C. 2913.02(A)(1), a first-degree misdemeanor.

{¶ 3} A trial was held before the judge. The state presented the testimony of three witnesses, appellant did not testify nor present any witnesses. Included in the testimony presented was the following testimony relevant to this appeal.

### A. Trial Testimony

#### 1. Testimony of T.P.

{¶ 4} Appellant's sister, T.P., testified that on July 17, 2022, she went to appellant's home to pick up some things he had borrowed from her. She did not enter the apartment, she waited outside for him to bring the things to her. Appellant first brought out two folding chairs. T.P. took the chairs to her car and returned to wait outside by the door. Next, appellant came out of his apartment with a folding table and a butcher knife and threatened T.P. T.P. got scared and ran across the street. According to T.P.,

2.

appellant threw the table into her car window, shattering it, then went into her car and took her wallet and a black and white Betty Boop purse, which was inside a green bag, and went back inside his apartment. Once he went back inside his apartment, T.P. returned to her car and called the police.

{¶ 5} T.P. further testified that she was paid that day and there was $375 in her wallet. T.P. did not give appellant permission to take her purse and wallet.

{¶ 6} After the police arrived, they retrieved the green bag with T.P.'s purse and wallet inside. When it was returned to T.P., the purse only had $29 inside.

### 2. Testimony of Officer Savannah Kill

{¶ 7} Officer Kill testified, inter alia, to seeing "other units" returning a green bag to T.P. Upon cross-examination, when asked where the other officers had obtained the green bag, Officer Kill said that "[t]hey stated that they got it from inside [appellant's] apartment." She did not have any knowledge of money being found on appellant when he was arrested.

### 3. Testimony of Officer Lucas Freels

{¶ 8} Officer Freels testified that appellant was asked about the altercation and said that nothing had happened, that T.P. had "come over to pick up property and * * * pepper sprayed him in the face." When asked about "[T.P.'s] purse being in his apartment, * * * [appellant] stated that he did not know how it got in there." After reviewing his report, he also explained that appellant "gave permission for the crew to go

into the apartment to retrieve the victim's purse, but he stated that the victim did not go into his apartment."

{¶ 9} Officer Freels testified he conducted an inventory of items in appellant's pocket when they arrested him and a few dollars were found on him. At the end of his testimony, the judge asked Officer Freels if he retrieved the bag from the house, or whether he observed someone else get the bag from the house, to which he responded that "[a]nother crew retrieved the bag."

## B. Verdict

{¶ 10} The judge ultimately found appellant guilty of two of the four charges: criminal damaging and theft. The judge made the following statement regarding the theft charge:

> As to the theft, [T.P.] testified that she had a green bag with a Betty Boop purse within the bag and that [appellant] took that bag from her. It contained things, most importantly, the purse and the money. The bag was recovered within his premises and returned to her minus the money. So based upon the testimony of the victim and the fact that the officers recovered the bag within the defendant's home, I do find the state has proven that case beyond a reasonable doubt and have made a finding of guilty as to the theft.

## C. Sentencing

{¶ 11} Appellant was sentenced to 180 days at the Corrections Center of Northwest Ohio ("CCNO"), which were suspended, and active probation for a period of one year, for the petty theft conviction, and 90 days in CCNO, which were also suspended, and a year of active probation on the criminal damaging conviction.

{¶ 12} Appellant appealed his theft conviction.

## III. Law and Analysis

{¶ 13} Appellant argues that the theft conviction was against the manifest weight of the evidence as "all supporting evidence was hearsay." He cites to Officer Kill's testimony that other officers "stated they got [the green purse] from inside [appellant's] apartment," as well as Officer Freels' statement that he did not go into the house to retrieve the bag, rather "[a]nother crew retrieved the bag."

{¶ 14} In determining whether a conviction is against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences drawn from that evidence, consider the credibility of the witnesses and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state;

5.

rather, we "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 6th Dist. Lucas No. L-21-1248, 2022-Ohio-4421, ¶ 22, quoting *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15. Only in "the exceptional case in which the evidence weighs heavily against the conviction" is a conviction reversed on manifest weight grounds. *Id*., quoting *Thompkins* at 387.

{¶ 15} We first note that appellant did not object to the admission of the statements which he claims are hearsay, and thus, we review the admission of those statements for plain error. Under the doctrine of plain error, appellant must show "that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal [is] necessary to correct a manifest miscarriage of justice." *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 22, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. Here, we do not find plain error.

{¶ 16} First, this case was tried to the bench, and "a judge in a bench trial is presumed not to have considered improper evidence in reaching a verdict," but rather is presumed to have "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 39, quoting *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987).

6.

{¶ 17} Second, assuming for purposes of argument that both of the above comments constitute hearsay,[2] we do not find that the admission of that testimony affected the outcome of the proceeding, or that reversal is necessary to correct a manifest miscarriage of justice. Here, there was other evidence in the record supporting a finding of guilty regarding the theft offense.

{¶ 18} R.C. 2913.02(A)(1) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." T.P. testified that appellant took her bag, which contained her purse, wallet and some money and took them into his apartment, that she did not give him permission and did not enter his apartment, and that when officers arrived they retrieved the bag. There is also other testimony from Officer Freels, that appellant has not claimed is hearsay, stating that appellant gave officers permission to go into his apartment to retrieve the bag and that appellant admitted T.P. was not inside appellant's home.

{¶ 19} Therefore, we do not find that appellant's conviction is based on hearsay, or is against the manifest weight of the evidence. Appellant's assignment of error is found not well-taken.

---

[2] We note that the state did not provide any specific argument that these statements are not hearsay and we find for purposes of this appeal that it is unnecessary to conduct this analysis.

7.

## IV. Conclusion

{¶ 20} The judgment of the Toledo Municipal Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                    _____
                                                              JUDGE
Myron C. Duhart, J.

Charles E. Sulek, J.                      _____
CONCUR.                                                   JUDGE

                                          _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.